***********
After review of the record and documents from the Full Commission file, and listening to the oral arguments of the parties, the Full Commission finds that good grounds exist to reopen the record and to receive further evidence.
 ***********
On February 4, 2008, Plaintiff was working for Defendant-Employer as a licensed practical nurse when a resident for whom she was providing care became agitated and struck her with both fists in the chest, knocking her backwards out of the patient room and onto her medication cart. Shortly after being struck by the resident, Plaintiff went to the hospital, where she received instructions to remain out of work and follow up with her primary care physician for the contusions to her upper body. Plaintiff's medical records indicate that she initially complained of chest and left shoulder/neck pain. *Page 2 
Defendants admitted liability for Plaintiff's injury on a Form 60 indicating that the injury was to her neck and chest. The primary issues before the Full Commission are whether Plaintiff's subsequently diagnosed conditions of cervical dystonia, depression, post-traumatic stress disorder and traumatic brain injury are causally related to her admittedly compensable injury and whether she was disabled after Defendants terminated her compensation on March 10, 2008.
Plaintiff received treatment at Nash Urgent Care on February 5, 2008 and February 11, 2008 for neck and chest pain. She was prescribed medications and physical therapy and instructed to return to light-duty work. On February 27, 2008, Defendant-Employer accommodated Plaintiff's light-duty restrictions, and assigned her to work in the laundry room. Plaintiff worked in the laundry room for approximately 45 minutes, and then sat down and began eating. Later, Plaintiff asserted that she could not perform the light-duty job.
On March 6, 2008, Plaintiff presented to Dr. Greig Vincent McAvoy, an orthopaedist, due to her ongoing pain complaints. Dr. McAvoy concluded that Plaintiff's February 4, 2008 work injury resulted in "very superficial injuries" that required no further active treatment from him. Further, Dr. McAvoy noted "magnification of symptoms" and was of the opinion that Plaintiff was at maximum medical improvement. He instructed her to return to full-duty work without restrictions.
On March 11, 2008, Plaintiff returned to work with Defendant-Employer. When she received her usual assignment of responsibility for two (2) halls, Plaintiff advised her supervisor that she could not work on both halls, and that it was her understanding that she would only be responsible for working a single hall when she returned to work. Plaintiff's supervisor instructed her to at least try working both halls; however, Plaintiff refused to take the keys to her medication *Page 3 
cart and left the premises. Thereafter, Defendants terminated Plaintiff's workers' compensation benefits effective March 10, 2008.
After she left the work premises on March 11, 2008, Plaintiff sought treatment on her own from Dr. Samuel M. Wesonga, a family medicine specialist. Dr. Wesonga took Plaintiff out of work.
On March 12, 2008, Plaintiff went to her last authorized physical therapy session. Upon completion of the physical therapy session, Plaintiff felt dizzy and sick, and later experienced stroke-like symptoms. Plaintiff was hospitalized for the next three (3) days. Plaintiff returned to Dr. Wesonga on March 17, 2008, but he did not address work restrictions at this visit.
On March 28, 2008, Plaintiff presented to Dr. Brian Thomas Szura, an orthopedist. Dr. Szura released Plaintiff to return to work with restrictions that included no lifting/carrying of more than two (2) to three (3) pounds with the left upper extremity, no stooping, no climbing ladders, and no kneeling. Defendant-Employer offered Plaintiff employment within these restrictions, but she refused to return to work in any capacity.
On May 20, 2008, Plaintiff presented to Dr. James Bryan Cooper, a neurologist, who diagnosed her with neck pain, cervical dystonia, stroke, depression, and traumatic brain injury. On November 11, 2008, Dr. Cooper noted that Plaintiff's cervical dystonia worsened to the point that she could move her neck to the left only 20 degrees. Dr. Cooper opined that Plaintiff's February 4, 2008 work injury caused her neck pain, cervical dystonia, depression, post-traumatic stress disorder (PTSD), and traumatic brain injury. Dr. Cooper was also of the opinion that the force of the blow required to push Plaintiff back against her medication cart was enough to sustain a traumatic brain injury. He ordered neuropsychological testing to assist him in determining whether Plaintiff's traumatic brain injury is the result of trauma or some other cause. *Page 4 
Upon referral of Dr. Cooper, on July 1, 2008, Plaintiff presented to Dr. David Scott Helm, a psychiatrist, for treatment of her depression and PTSD. Dr. Helm diagnosed Plaintiff with depression and indicated in his treatment notes that she had signs of PTSD. The parties did not depose Dr. Helm.
The Deputy Commissioner concluded that although Plaintiff sustained a compensable work injury on February 4, 2008, she failed to meet her burden of proving that her current medical conditions are causally related to her work injury, or that she remains disabled from any employment.
The Full Commission finds and concludes from the evidence of record that the causal relationship between Plaintiff's current physical and psychological conditions and her admittedly compensable injury is not adequately addressed in this record. Dr. Cooper is of the opinion that Plaintiff has traumatic brain injury. The neuropsychological testing he ordered to assist him in determining whether this condition is the result of trauma or some other cause had yet to be completed as of the date of his deposition. Dr. David Helm appears to be the only physician who has treated Plaintiff for depression and PTSD, so his testimony would aid the Full Commission.
It is the Full Commission's duty to determine all of the compensable consequences of Plaintiff's admittedly compensable February 4, 2008 work injury. The Full Commission is of the opinion that further evidence is needed in order to properly make a determination as to whether Plaintiff's diagnoses of traumatic brain injury, depression, cervical dystonia and PTSD are causally related to her February 4, 2008 work injury.
The Full Commission therefore ORDERS that this matter be reopened in order to obtain the deposition testimony of Dr. David Scott Helm, Plaintiff's treating psychiatrist, and to gather additional evidence on the issue of whether Plaintiff's diagnoses of depression, cervical dystonia, *Page 5 
traumatic brain injury and PTSD are causally related to her February 4, 2008 work injury. The Full Commission additionally ORDERS that the neuropsychological testing ordered by Dr. James Bryan Cooper, and any additional testing, evaluations, and/or treatment reasonably necessary to determine whether Plaintiff's traumatic brain injury, depression, cervical dystonia and PTSD are causally related to her compensable injury, be provided at Defendants' expense.
The parties shall have 60 days from the filing date of this Order to obtain additional deposition testimony, the neuropsychological testing ordered by Dr. Cooper and any other evaluations and tests the parties deem necessary and which can be completed within the period allowed. The parties shall forward the evidence gathered directly to the Full Commission with notification that the record is complete. Upon receipt of the additional evidence, the Full Commission shall enter an Order setting forth a schedule for briefing and for further oral arguments, if necessary. All correspondence from the parties to the Full Commission concerning this matter shall be directed to Bernadine S. Ballance, Commissioner.
This the ___ day of February 2010.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 6 
S/___________________ CHRISTOPHER SCOTT COMMISSIONER